

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*        *(203)821-3700*
*157 Church Street, 25ᵗʰ Floor*        *Fax (203) 773-5376*
*New Haven, Connecticut 06510*        *www.justice.gov/usao/ct*

**February 25, 2015**

Hubert Santos

Law Offices of Hubert Santos

51 Russ Street

Hartford, CT 06106

United States District Court
District of Connecticut
FILED AT HARTFORD
February 25, 2015
Roberta D. Tabora, Clerk
By
Deputy Clerk

     Re:    **United States v. Mozaffar Khazaee**

          **Criminal No. 3:14CR09 (VLB)**

Dear Attorney Santos:

     This letter confirms the plea agreement between your client, Mozaffar

Khazaee (the "defendant"), and the United States Attorney's Office for the District

of Connecticut (the "Government" or "this Office") concerning the referenced

criminal matter.

## THE PLEA AND OFFENSE

     The defendant agrees to waive his right to be indicted and to plead guilty to

a one-count substitute information charging him with Unlawful Export and

Attempted Export of Defense Articles from the United States in violation of The

Arms Export Control Act, 22 U.S.C. § 2778, (the "AECA").  The defendant

*Hubert Santos, Esq.*
*Page 2*

understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

1. The defendant exported, attempted to export or caused to be exported from the United States a defense article listed on the United States Munitions List ("USML") or technical data relating to a defense article on the USML;

2. A license was required from the United States Department of State ("State Department") for the defendant's export or attempted export of the defense article or technical data;

3. The defendant did not obtain a license or written approval for the export from the State Department; and

4. The defendant did such acts willfully.

<u>THE PENALTIES</u>

This offense carries a maximum penalty of 20 years of imprisonment and a $1,000,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than 3 years to begin at the expiration of any term of imprisonment. The defendant understands that, should he violate any condition of the supervised release, he may be required to serve a further term of imprisonment of up to 2 years.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the

offense; or (3) the amount specified in the section defining the offense which is $1,000,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100.  The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

### Forfeiture

Pursuant to 22 U.S.C. § 401 and 28 U.S.C. § 2461(c), and based on his violation of the AECA, as charged in Count One of the Substitute Information, the defendant agrees to forfeit all right, title, and interest in:  (1) all the contents of the boxes of documents that he attempted to ship except for the personal items that he or his representative are willing to identify; (2) all of the documents obtained from his employers; and (3) all of the digital media identified below.  Moreover, defense counsel will provide any copies of the documents obtained from defendant's employers to Government counsel and identify all persons who had access to the documents prior to the date of sentencing.

Hardware/Device

| Type: | Make: | Model | Serial Number: |
|---|---|---|---|
| External Hard Drive | IOMEGA | | FRAF514FeM |
| Laptop | Toshiba | | 7D115252C |
| External Hard Drive | Toshiba | | 71R3C185TQQ4 |
| Thumb Drive | Lexar Cruzer Firefly | | 0A4E9703090212260307 |
| Thumb Drive | SanDisk | Micro | 0000162443723863 |
| Laptop | Lenovo | 4446 | L3-BFV1D |

Hubert Santos, Esq.
Page 4

(hereinafter, the "Forfeitable Assets").

The defendant acknowledges that each of the Forfeitable Assets is subject to forfeiture as defense articles, related technical data, or other articles sought to be shipped in violation of the AECA, or as defense articles, technical data, or other articles sought to be shipped in violation of the AECA.

The defendant agrees to waive all interests in each of the Forfeitable Assets, in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for each of the Forfeitable Assets, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets covered by this agreement. The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant

also understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

### Forfeiture of $59,945.00 in Cash

Moreover, the defendant agrees to enter into a Stipulated Forfeiture Agreement ("Agreement"), in which he shall stipulate and agree to the civil forfeiture of, and to forfeit to the custody of the Department of Homeland Security the $59,945.00 in United States currency seized on his person at Newark International Airport on or about January 9, 2014 (the "Forfeitable Cash"). The defendant agrees to execute and enter into that Agreement on or before the date that he enters his guilty plea. The defendant agrees to execute and enter into any other documents and agreements necessary to implement the terms of the Agreement.

The defendant hereby stipulates and agrees, and shall stipulate and agree in the Agreement and/or in any civil, criminal, or administrative proceedings involving the Forfeitable Cash, that:

(a) he is the sole owner of the Forfeitable Cash;

(b) the Forfeitable Cash consists of $59,945.00 in United States currency seized from the defendant's person at Newark International Airport on or about January 9, 2014, which is property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, from interstate transportation of stolen property and/or wire fraud and/or mail fraud, in

violation of 18 U.S.C. §§ 2314, 1343 and/or 1341, respectively, and accordingly

is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c);

(c)   neither he nor any of his current or future officers, agents,

representatives, subrogees, assigns, or successors shall appear in or pursue any

action or proceeding at law or in equity to contest the forfeiture of the Forfeitable

Cash to the United States;

(d)   should any claimant appear in or pursue or attempt to pursue any civil

proceeding to contest the forfeiture of the Forfeitable Cash, the defendant shall

provide truthful testimony, Affidavits, and statements in such proceedings,

regarding his sole ownership of the Forfeitable Cash, and regarding the status of

the Forfeitable Cash as set forth in paragraph (b), above;

(e)   he will consent to the entry of any Motion for Decree of Forfeiture

consistent with the terms of the Agreement; and

(f)   he will release and forever discharge the United States of America, the

United States Department of Homeland Security, Homeland Security

Investigations, the Federal Bureau of Investigation, the Defense Criminal

Investigative Service, the Department of Commerce's Office of Export

Enforcement, the U.S. Customs and Border Protection Service, and the U.S. Air

Force's Office of Special Investigations, and their officers, agents, servants, and

employees, and their heirs, successors, or assigns, from any and all actions,

causes of action, suits, proceedings, debts, dues, contracts, judgments,

damages, claims, and/or demands whatsoever, in law or equity, which he and his

heirs, successors, or assigns ever had, now have, or may in the future have in

*Hubert Santos, Esq.*
*Page 7*

connection with the seizure, detention, forfeiture, and destruction or other disposition by the United States of America of the defendant's property.

(g)   he will hold and save the United States of America, the United States Department of Homeland Security, Homeland Security Investigations, the Federal Bureau of Investigation, the Defense Criminal Investigative Service, the Department of Commerce's Office of Export Enforcement, the U.S. Customs and Border Protection Service, and the U.S. Air Force's Office of Special Investigations, and their officers, agents, servants, and employees, and their heirs, successors, or assigns, harmless from any claims by any others, including costs and expenses for or on account of any and all lawsuits or claims of any character whatsoever, in connection with the seizure, detention, forfeiture, and destruction or other disposition of the defendant property.

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement.  The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office.  The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than

*Hubert Santos, Esq.*
*Page 8*

he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the

*Hubert Santos, Esq.*
*Page 10*

Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

### Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2M5.2 is 26. That level is increased by two (2) levels for abuse of a position of trust pursuant to § 3B1.3. Three (3) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 25.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 25, and assuming a Criminal History Category I, would result in a range of 57 to 71 months of imprisonment (sentencing table) and a fine range of $ 10,000 to $100,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of 1 year to 3 years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence. The Government intends to seek an upward departure or a non-Guidelines sentence of up to and including 10 years of incarceration based on the length of time that the defendant collected the

technical data, the volume and significance of the technology, and the transmission of some of the material to foreign nationals.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties expressly reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 97 months, a 3-year term of supervised release, and a $100 special assessment, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole

*Hubert Santos, Esq.*
*Page 12*

or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case.  The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case.  Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the substitute information before an

indictment could be returned.  The defendant acknowledges that he is knowingly and intelligently waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense.  The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Venue and other Constitutional Challenges to the Statute

In the event that venue is not proper in the District of Connecticut, the defendant understands that by entering a plea to this Substitute Information, the

defendant is knowingly, intelligently and voluntarily waiving his Constitutional right to a trial by an impartial jury in a particular place or "venue" – namely, in a state and district where the crime was committed.  By entering into this plea agreement, the defendant expressly acknowledges that he is knowingly, intelligently and voluntarily waiving his Constitutional right to be tried in a district or districts where venue is proper; he is knowingly, intelligently and voluntarily waiving his right to be prosecuted and tried in such districts; and he knowingly, intelligently and voluntarily consents to the disposition of this case in the District of Connecticut. Such a waiver of right to be tried in the state and district where a crime was committed is constitutionally permissible.  *See Singer v. United States*, 380 U.S. 24, 35 (1965).

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution.  The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

*Hubert Santos, Esq.*
*Page 15*

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or

*Hubert Santos, Esq.*
*Page 16*

local authority.  The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms, and in some states, the right to vote.  Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future.  The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing.  Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his

*Hubert Santos, Esq.*
*Page 17*

participation in export control violations, which form the basis of the substitute information in this case.  After sentencing, the Government will move to dismiss any prior indictment(s) because the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement.  If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

<u>NO OTHER PROMISES</u>

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY

KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY

*Hubert Santos, Esq.*
*Page 18*

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____          2/25/2015
**MOZAFFAR KHAZAEE**                       **Date**
**The Defendant**

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____          2/25/15
~~**HUBERT SANTOS, ESQ.**~~ Trent          **Date**
**Attorney for the Defendant** LaLima,
Esq.

Hubert Santos, Esq.
Page 19

## STIPULATION OF OFFENSE CONDUCT

The defendant Mozaffar Khazaee and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the Substitute information:

1. Mozaffar Khazaee is a native of Iran and holds dual citizenship in both Iran and the United States.

2. Khazaee's prior work experience includes employment with General Electric, Rolls Royce and Pratt & Whitney.  More specifically, from in or about November 2001 until August 2003, Khazaee worked as Lead Combustion Design Engineer for General Electric.  Khazaee worked as a Structural Specialist on the F136 Joint Strike Fighter at Rolls Royce in Indianapolis from ~~April 2004~~ MAY 2006 through ~~November 2010~~ FEBRUARY 2008.  From January 2011 through August 2013 Khazaee worked in various engineering capacities at Pratt & Whitney which is located in the District of Connecticut.  While employed at all three companies, Khazaee received training on the proper labeling, handling and storage of proprietary, trade secret and export-controlled documents, including those subject to the International Traffic in Arms Regulations ("ITAR"), and was subsequently granted access to said documents.  When Khazaee left his employment with each defense contractor, he confirmed that he did not maintain possession of any trade secret or proprietary information.

3. From in or about January 2010 until the end of November 2013, Khazaee lived in Manchester, Connecticut.

4. In or about November 2013, Khazaee caused a shipment to be sent by truck from Connecticut to a freight forwarder located in Long Beach, California, which was intended for shipment from the United States to the city of Hamadan in the Islamic Republic of Iran ("Iran"). The documentation for Khazaee's shipment indicated that it contained household goods.

5. Upon inspection and examination of the shipment, the content of the shipment included numerous boxes of documents consisting of sensitive technical manuals, specification sheets, technical drawings and data, and other proprietary material relating to military jet engines and the United States Air Force's F35 Joint Strike Fighter ("JSF") program and the F-22 Raptor.

6. Federal law enforcement also obtained various digital media from the shipment. The examination of the digital media and the contents of the boxes included thousands of pages of material relating to the JSF and F-22 programs. The documents contained language regarding the technical specifications of the JSF engine program, as well as diagrams, blueprints, test results, and other documentation relating to the inner-workings of the jet's engine. The documents examined included documents that were labeled as "Export-Controlled," as well as stamped with "ITAR-controlled" warnings.

7. The State Department's Directorate of Defense Trade Controls Compliance ("DDTC") has confirmed that there are no responsive records of applications submitted by or on behalf of Khazaee seeking an export

license.  The Department of the Treasury's Office of Foreign Assets Control has also confirmed that it has not found any responsive records of applications submitted by or on behalf of Khazaee for an OFAC license.

8.  DDTC has certified that at least two documents that were contained in the 44 boxes of documents that Khazaee attempted to ship to Iran are United States Munitions List ("USML") items.  One document is a 103-page document containing technical data that DDTC has confirmed is covered by Category XIX(g) on the USML.  The second document is a 5-page document containing technical data that DDTC has confirmed is covered by Category XIX(g) on the USML.

9.  All of the material from the three defense contractors, which totaled approximately 50,000 pages, has been reviewed by technical representatives from each contractor.  Based on their assessments, Khazaee was in unauthorized possession of tens of thousands of pages of defense contractor material.  In total, Khazaee sought to export approximately 1500 documents that were identified as containing trade secrets and approximately 600 documents that were ITAR-controlled.

*Hubert Santos, Esq.*
*Page 22*

The written stipulation above is incorporated into the preceding plea agreement.  The defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

_____
**STEPHEN B. REYNOLDS**
**ASSISTANT U.S. ATTORNEY**

_____
**KRISHNA R. PATEL**
**ASSISTANT U.S. ATTORNEY**

_____
**MOZAFFAR KHAZAEE**
**The Defendant**

2, 25, 2015
**Date**

_____
~~**HUBERT SANTOS, ESQ.**~~  Trent Lahimur, Esq.
**Attorney for the Defendant**

2/25/15
**Date**

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A.  The order of restitution may include:

1.  If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

    A.  Return the property to the owner of the property or someone designated by the owner; or

    B.  If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

    The greater of -

      (I)  the value of the property on the date of the damage, loss, or destruction;  or

      (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2.  In the case of an offense resulting in bodily injury to a victim –

    A.  Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant.  In addition to the court-ordered restitution, the court may order that the conditions of its order of restitution be made a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e).  Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court.  *See* 18 U.S.C. §§ 3614; 3613A. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.